IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 4:23-cr-158 |
| | ) | |
| v. | ) | |
| | ) | |
| BRETT MICHAEL BAILEY, | ) | DEFENDANT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

**INTRODUCTION**

On December 23, 2023, the government obtained a nine-count indictment charging the defendant, Brett Michael Bailey, with: three counts of production of child pornography, in violation of 18 U.S.C. §§ 2251(a), and (e) (counts one through three); receipt of child pornography on different devices, in violation of 18 U.S.C. §§ 2252A(a)(1) and 2252A(b)(1) (counts four and six); and possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), and 2252A(b)(2). A notice of forfeiture was also filed pursuant to 18 U.S.C. § 2253. On February 26, 2024, Mr. Bailey formally accepted responsibility for his offense by pleading guilty to counts two (production of child pornography) and four (receipt of child pornography) of the indictment, and consenting to the forfeiture, pursuant to a written plea agreement. The agreement calls for dismissal of the remaining counts at the time of sentencing. The Court accepted his guilty plea on March 12, 2024.

The presentence report drafter determined that Mr. Bailey's base offense level under the advisory sentencing guidelines for the production offense is 32. (PSR ¶47). Because the offense involved a minor between the age of twelve and sixteen, two additional levels were added. (PSR

¶48).  Because the offense involved commission of a sexual act or contact, two more levels were added. (PSR ¶49).  Because the offense involved Mr. Bailey's daughter, two additional levels were added. (PSR ¶50).  The base offense level for the receipt offense is 22. (PSR ¶55).  Because the received materials involved prepubescent minors, two additional levels were added. (PSR ¶56).  Because distribution occurred, two more levels were applied. (PSR ¶57).  Because some of the materials involved sadistic and masochistic conduct or other depictions of violence, four levels were added. (PSR ¶58).  Because a computer was involved in the offense, two additional levels were added. (PSR ¶59).  And because the offense involves more than 600 images, five more levels were added. (PSR ¶60).

Due to the guideline application rules, two additional levels were added under the multiple count rules. (PSR ¶¶65–68).  Because Mr. Bailey engaged in a pattern of activity involving prohibited sexual conduct, a five-level pattern enhancement was applied under USSG §4B1.5(b). (PSR ¶69).  After applying a three-level reduction for acceptance of responsibility (PSR ¶¶70–71) and calculating his criminal history category as I (PSR ¶92), the presentence report drafter found a total offense level of 42, and an advisory sentencing guideline range of 360 months to life, which then becomes 360 to 600 months, due to the statutory maximum available terms of imprisonment and operation of USSG §5G1.2(b). (PSR ¶163).  There are no advisory sentencing guideline issues requiring resolution.[1]  The parties jointly recommend imposition of $145,500 in restitution.  Mr. Bailey respectfully argues that the advisory sentencing range in this case is greater than necessary, and that a sentence below the range is "sufficient" under the 18 U.S.C. § 3553(a) factors.

---

[1] The parties will provide a breakdown of the recommended restitution amount for each requesting victim at the sentencing hearing.

**ARGUMENT**

In the summer of 2023, multiple law enforcement agencies operating on the BitTorrent peer-to-peer file sharing program were able to single-source download child pornography files from an internet protocol address traceable to Brett Bailey. (PSR ¶12). The agents were able to download several child pornography files from Mr. Bailey's computer, which then led to them obtaining and executing a search warrant in October. (PSR ¶¶13–14). The search found over 13,000 carved images, 17,000 active images, and 2,400 carved video files of child pornography materials on a CyberPower tower computer. (PSR ¶16). The tower computer also contained two short video recording files of cell phone videos taken in 2020, which were filmed by Mr. Bailey and depicted the lascivious exhibition of his then-twelve-year-old daughter's genitals and him having sexual contact with the area.[2] (PSR ¶25).

A cellular phone was found to contain 2,300 active images of child pornography, and 100 active video files, including images of prepubescent minors and minors under age twelve. (PSR ¶19). A laptop computer contained over 15,000 carved images of child pornography, and 500 active video files of child pornography, also containing scenes of prepubescent children. (PSR ¶21). Another cellular phone contained over 900 carved image files of child pornography, and 500 active video files, again including prepubescent minors. (PSR ¶23).

Mr. Bailey's daughter was interviewed and relayed that her father had bathed her and recorded her sometime when she was around ten or eleven years old, and that she then started taking showers at age twelve, and he tried to help her when she would get out of the shower.

---

[2] In total, sixteen video files of Mr. Bailey's daughter were recovered, showing her in various stages of undress, in poses or positions requested by Mr. Bailey, and/or with Mr. Bailey having contact with her interacting with her in a lascivious manner. (PSR ¶¶74–84). The video files had creation dates spanning May to September of 2020. *Id.*

(PSR ¶27). She remembered that he would sometimes watch pornography on his phone while bathing her, and that he sometimes masturbated while doing so. (PSR ¶28). She indicated that she would try to shut the shower curtain so he could not see her, but that she could tell he was touching himself with one hand while washing her with the other. (PSR ¶29). She reported that he had touched and licked her breasts in the past, that he had touched her vagina in the past, and that she one time let him make oral contact with her vagina. (PSR ¶¶30–31, 34). She recounted an incident where she was posed nude on Mr. Bailey's bed while he masturbated, and that he had sexual contact with her once while engaging in sex with her mother in the same room (although her mother did not know this occurred or that she was awake). (PSR ¶¶32–33). She recalled Mr. Bailey trying to get her to masturbate and asking her to touch him but she refused. (PSR ¶34).

Mr. Bailey was also interviewed and admitted to file-sharing on the tower computer. (PSR ¶35). He admitted viewing child pornography, that he had tried to get rid of it in the past, that there would likely be child pornography on his phone, that his phone was connected to the BitTorrent platform, and that he downloaded child pornography files while his wife was at work. *Id*. During another interview a month later with the Iowa Department of Human Services, Mr. Bailey admitted he abused his daughter in her early teen years, that he recorded giving her a bath on his phone, that he remembered touching her breast, admitted rubbing against her in his room, and that he had been downloading child pornography for around two years after ceasing sexual contact with his daughter. (PSR ¶36). During a final interview with law enforcement officers on December 14, 2023, Mr. Bailey stated that the videos of his daughter would have been taken by him with a cellular phone. He was then arrested on the federal indictment in this case. (PSR ¶37).

After his arrest, Mr. Bailey continued to accept responsibility for his conduct. He did not seek release from custody and entered into a plea agreement to resolve the case in a timely fashion. He has had only a single violation for disruptive conduct while detained at the jail and has pursued the online correctional programming available to him at the facility. (PSR ¶¶9–10). The question before the Court is what sentence to impose in the case.

Obviously, the conduct in this case is extremely serious, in that the offense involves the sexual abuse of Mr. Bailey's daughter, and the downloading of a significant amount of child pornography material through a file sharing platform on the internet. To his credit, Mr. Bailey appears to have been honest about what he did when questioned by law enforcement officers, and he has not wavered in his acceptance of responsibility for his actions. He did indeed cease abusing his daughter, albeit by turning to the downloading of child pornography as an alternative improper sexual outlet. Mr. Bailey has indicated that he "would like help," and that he welcomes therapy and even medication if necessary. (PSR ¶102). He is frightened of imprisonment, which shows that such punishment will have deterrent force on him. *Id*.

Furthermore, Mr. Bailey has faced significant obstacles in his life, which have likely damaged him in ways that contributed to his offense behaviors. His biological father was never involved in his life, and after his mother and stepfather divorced, his siblings went with his stepfather, but he stayed with his mother. (PSR ¶98). His mother had drug problems and left him to be raised by his grandparents. (PSR ¶¶98, 104). He acted out in response to his mother's absence, which then led to him being sent to live with his paternal grandparents at age seven or eight. *Id*. His life there was positive, but he remained a defiant child, and at age thirteen or fourteen he entered into an abusive relationship (it is not obvious that Mr. Bailey recognizes this was abuse) with a twenty-one-year-old woman who had mental health problems and provided

him with marijuana, leading to his grandmother removing him from her home. (PSR ¶98).  He then bounced through various home placements during his teen years and was homeless at times. (PSR ¶¶98, 104).  He was able to graduate from high school through an alternative schooling program, after which he tried to go live with his mother, but she separated from his new stepfather due to her continued drug use, and Mr. Bailey was then victimized by his stepfather using his name on financial obligations that they could not pay. (PSR ¶¶98, 145).

Given his turbulent childhood and related behaviors, his paternal grandmother had Mr. Bailey psychologically evaluated after he came into her care as a child. (PSR ¶129).  At age seven or eight, he was diagnosed with post-traumatic stress disorder, schizophrenia, bipolar disorder, and attention-deficit hyperactive disorder. *Id*.  He was placed on medications and went to counseling until he left his grandmother's care and went into the home-placement system. *Id*.  Around the same time, he was in the abusive relationship that led to him losing his grandmother's support, and he started engaging in disorderly conduct and getting in fights that led to juvenile court action against him. (PSR ¶¶85–87).  He was smoking marijuana daily and dabbling in the use of alcohol and other drugs to the point where he participated in some treatment at a youth shelter in Ames. (PSR ¶¶135–138, 142).  He recalls feeling depressed and suicidal from childhood, and he attempted suicide at fourteen when his mother refused to take custody of him when he needed a place to go. (PSR ¶131).  He later received treatment while in the juvenile housing system, where his history of depression and substance use was documented, and he was placed on psychiatric medications. (PSR ¶130).  At age seventeen, when off medications, he reported to school hungover and was hospitalized after saying he wanted to die. *Id*.  That hospitalization resulted in diagnoses of single episode severe major depressive disorder, cannabis dependence, alcohol abuse, adolescent conduct disorder, and ADHD. *Id*.

After aging out of the juvenile system and its resources, Mr. Baily was on his own. He met and married his wife shortly thereafter, which seems to have led to a long period of stability for him. He went many years without any problems with the law, slowed his marijuana use, and had stable work for many years. (PSR ¶¶120, 136, 153). But after the COVID pandemic hit and he lost his job in 2020, he appears to have slipped into a dark place over the next few years. (PSR ¶153). The abuse of his daughter transpired over this time, and he could only find work as a salesman working for commission and was bringing in essentially no income for the family. (PSR ¶152). He eventually started driving a cab, which was also a losing financial endeavor. (PSR ¶151). He was drinking almost every day and night, was engaging in hypersexualized behavior by engaging with adult and child pornography and pursuing sexual affairs. (PSR ¶¶90, 135). By September of 2022, he was smoking methamphetamine daily, and continued to do so until he attempted suicide in October 2023 after the search warrant was executed in this case. (PSR ¶¶131, 138). He destroyed his own world and has put himself in the position he is today. He has most recently been diagnosed with obsessive-compulsive personality disorder, post-traumatic stress disorder, recurrent moderate major depressive disorder, antisocial behavior, generalized anxiety disorder, and alcohol, cannabis, and stimulant use disorders. (PSR ¶133). He has been prescribed medications to help him with his mental state, which have been beneficial for him. *Id*.

Mr. Baily committed terrible crimes while he was in a horrible personal state. The offenses in this case and their ramifications are very serious under the law, and that seriousness is reflected in the penalty scheme mandated by Congress. Mr. Bailey faces anywhere from fifteen to fifty years of imprisonment in this case under the law, and the advisory sentencing guidelines recommend thirty years or more. The question becomes where his sentence should

fall on that spectrum. Whatever sentence the Court imposes within the statutory range will be lengthy and will remove Mr. Bailey from society and direct contact with his daughter for a long time. He recognizes that there is no "short" sentence available here. This, for a person who falls in criminal history category I and has no criminal history points under the advisory sentencing guidelines.

But it does not necessarily follow that Mr. Bailey needs a sentence within that advisory range to effectuate the statutory sentencing goals of 18 U.S.C. § 3553(a). The guidelines do not account for Mr. Bailey having voluntarily ceased the abuse of his daughter prior to law enforcement or other intervention. Nor do they fully account for the scope of his acceptance of responsibility, wherein he admitted his offenses repeatedly over several interviews with law enforcement and other investigating authorities and has not hidden from what he has done while also openly expressing a desire to get help. He has maintained his relationship with his wife and children despite his offenses and their impact, and the family is trying to work through what he has done and the effects it has and will have on all of them for the rest of their lives. (PSR ¶120). Besides wanting help for himself, he and his wife have made sure their daughter gets help as well. *Id*. As challenging and complex as their circumstances are, the family intends to work through it. And Mr. Bailey's daughter will have ample time to decide what that means for her as she reaches adulthood and builds her own life while he serves his prison sentence.

In conclusion, Mr. Bailey understands the seriousness of his offenses, has accepted responsibility for what he has done, and deeply regrets the harm his conduct has caused. The number of carved image files in the case shows some degree of the struggle with pornography and sex addiction he was facing, as he was deleting materials but could not subsequently stay away from them. The chaotic childhood he endured and related mental health and substance use

struggles through his life doubtlessly played a factor in his actions over the past few years. There is no dispute that Mr. Bailey committed serious crimes, and that the punitive sanction mandated by Congress for the offense is consequently, very harsh. However, the advisory sentencing range is greater than necessary given the nature and circumstances of this case, particularly after Mr. Bailey's personal history and characteristics are considered. *See Koon v. United States*, 518 U.S. 81, 113 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."). The Court should impose a sentence below the advisory range in this case, because such a sentence would be sufficient to fulfill the mandates of 18 U.S.C. § 3553(a), and appropriately reflects Mr. Bailey individual facts and circumstances when compared to the spectrum of offenders in these types of cases.[3]

---

[3] Mr. Bailey respectfully suggests that he should not be subjected to the $5,000 special assessment under 18 U.S.C. § 3014 or the additional child pornography special assessment under 18 U.S.C. § 2259A. The § 3014 assessment is not applicable to indigent persons. 18 U.S.C. § 3014(a). Mr. Bailey qualified as indigent for appointment of counsel purposes at the beginning of the case. His only asset of note is one vehicle valued at $2,500, and he is subject to just under $10,000 in liabilities. (PSR ¶156). It is purely speculative whether his financial condition is likely to improve in the future, given the amount of time he must serve in prison, and the collateral consequences of this conviction that will limit his future employment prospects. Given his financial circumstances and the amount of restitution that must be ordered in this case, it is likely Mr. Bailey will remain indigent in the future for a significant amount of time in any scenario, and the assessment at the $5,000 amount should not be imposed. Relatedly, given his financial status, the referenced limitations on his future earning potential, the amount of restitution that must be ordered, that he received no illegal financial gains from the offense, and the risk of financial penalties impacting his innocent wife and children, the factors in 18 U.S.C. § 3572 and 18 U.S.C. § 3553(a) support no additional assessment in this case. *See* 18 U.S.C. § 2259A(c).

Respectfully submitted,

*/s/ Joseph Herrold*
Joseph Herrold, Assistant Federal Defender
FEDERAL PUBLIC DEFENDER'S OFFICE
400 Locust Street, Suite 340
Des Moines, Iowa 50309-2353
PHONE: (515) 309-9610
FAX: (515) 309-9625
E-MAIL: joe_herrold@fd.org
ATTORNEY FOR THE DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2024, I electronically filed this document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.

*/s/ Morgan Conn*, Paralegal